831 P.2d 995

Betty BIERNER, Plaintiff–Appellant,

v.

STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Defendant–Appellee.

Alrundus HART, Plaintiff–Appellee,

v.

STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Defendant–Appellant.

Nos. 12730, 12814.

Court of Appeals of New Mexico.

March 26, 1992.

Mary Y. C. Han, Albuquerque, for plaintiff-appellant Betty Bierner.

Tom Udall, Atty. Gen., Lewis J. Terr, Sp. Asst. Atty. Gen., Taxation and Revenue Dept., Motor Vehicle Div., Santa Fe, for defendant-appellee State of N.M. (No. 12814).

Nancy Hollander, Freedman, Boyd, Daniels, Peifer, Hollander & Guttmann, P.A., Albuquerque, for plaintiff-appellee Alrundus Hart.

Tom Udall, Atty. Gen., Frank D. Katz, Sp. Asst. Atty. Gen., Taxation and Revenue Dept., Santa Fe, for defendant-appellant State of N.M. (No. 12730).

## OPINION

HARTZ, Judge.

We have consolidated these two appeals on our own motion because they raise the same question: To revoke a driver's license under the Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (Repl. Pamp.1987), does the State have to establish that the licensee's blood alcohol content (BAC) was at least .1 percent by weight at the time the licensee was driving? We hold that it does not. The State needs to prove only that the licensee's BAC equaled or exceeded the statutory limit at the time the licensee took a blood alcohol test in accordance with the Implied Consent Act.

The Motor Vehicle Division of the Taxation and Revenue Department (MVD) revoked the licenses of both Alrundus Hart and Betty Bierner (Licensees) pursuant to Section 66–8–112 after each was arrested for driving under the influence of alcohol, in violation of NMSA 1978, Section 66–8–

102 (Cum.Supp.1991), and then given a breath alcohol test that indicated a BAC of at least .1 percent. Hart's two breath tests were administered approximately 47 minutes after he had last driven his vehicle; Bierner's test was administered approximately one hour and 18 minutes after she had last driven. Each appealed to the district court.

District Judge Albert S. Murdoch reversed the revocation of Hart's license. He found that Hart's "blood alcohol level could either rise or dec[r]ease between the time he was driving and the time the officer administered the breath alcohol tests," and held that the "blood alcohol content of the driver must relate back to the time he was actually driving and not to the time of testing in order to sustain a license revocation pursuant to NMSA § 66–8–112." The State had offered no evidence relating Hart's BAC at the time of his breath tests to his BAC at the time he was driving. District Judge Gerard W. Thomson, on the other hand, sustained the revocation of Bierner's license. He held that the MVD was not required to prove Bierner's BAC at the time she was driving.

## DISCUSSION

■ The Implied Consent Act directs law enforcement officers to administer a blood or breath test for BAC when they have reasonable grounds to believe that a person was driving while under the influence of intoxicating liquor or a drug. § 66–8–107(B). The person may refuse to take the test, but such refusal is ground for revocation of the person's driver's license. *See* § 66–8–111(A), (B). If the test is administered and indicates that the driver's BAC exceeds .1 percent by weight, the law enforcement officer who requested or directed the administration of the test must immediately serve upon the driver a written notice of revocation and of a right to a hearing. § 66–8–111.1. The officer should then take the driver's license, issue a temporary license valid for 30 days, and send the MVD the seized license and a signed statement regarding the test result and reasonable grounds to arrest the driver. *Id.* The revocation is effective 30 days

after notice of revocation. § 66–8–112(A). Section 66–8–112 then provides in pertinent part as follows:

B. Within ten days after receipt of notice of revocation pursuant to Subsection A of this section, a person whose license or privilege to drive is revoked or denied or his agent may request a hearing. Failure to request a hearing within ten days shall result in forfeiture of the person's right to a hearing * * *. A date for the hearing shall be set by the director, if practical, within thirty days after receipt of notice of revocation. The hearing shall be held in the county in which the offense for which the person was arrested took place.

C. The director [of MVD] may postpone or continue any hearing on his own motion or upon application from the person and for good cause shown for a period not to exceed ninety days from the date of notice of revocation and provided that the director extends the validity of the temporary license for the period of the postponement or continuation.

D. At the hearing, the director or his agent may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers.

E. The hearing shall be limited to the issues:

(1) whether the law enforcement officer had reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor;

(2) whether the person was arrested;

(3) whether this hearing is held no later than ninety days after notice of revocation; and either

(4)(a) whether the person refused to submit to a test upon request of the law enforcement officer; and

(b) whether the law enforcement officer advised that the failure to submit to a test could result in revocation of his privilege to drive; or

(5)(a) whether the chemical tests were administered pursuant to the provisions of the Implied Consent Act; and

(b) the test results indicated a blood alcohol content of one-tenth of one percent or more by weight if the person is eighteen years of age or older * * *.

F. The director or his designee shall enter an order either rescinding or sustaining the revocation or denial of the person's license or privilege to drive if he finds that the law enforcement officer had reasonable grounds to believe the driver was driving a motor vehicle while under the influence of intoxicating liquor or drug, that the person was arrested, that this hearing is held no later than ninety days after notice of revocation and that the person either refused to submit to the test upon request of the law enforcement officer after the law enforcement officer advised him that his failure to submit to the test could result in the revocation of his privilege to drive or that a chemical test was administered pursuant to the provisions of the Implied Consent Act and. the test results indicated a blood alcohol content of one-tenth of one percent or more by weight if the person is eighteen years of age or older * * *. If one or more of the above are not found by the director, the person's license shall not be revoked.

G. A person adversely affected by an order of the director may seek review within thirty days in the district court in the county in which the offense for which the person was arrested took place. The district court, upon thirty days' written notice to the director, shall hear the case. On review, it is for the court to determine only whether reasonable grounds exist for revocation or denial of the person's license or privilege to drive based on the record of the administrative proceeding.

The statute requires that "the test results indicated a blood alcohol content of one-tenth of one percent or more by weight." § 66–8–112(F). The statutory language makes no reference to BAC at the time the licensee was driving.

Licensees argue, however, that Section 66–8–112(F) should be read in light of Section 66–8–102(C), which states:

It is unlawful for any person who has one-tenth of one percent or more by weight of alcohol in his blood to drive any vehicle within this state.

Section 66–8–102(C) is one of a class of statutes enacted throughout the country which are called "per se statutes" because the criminal violation is established by the BAC without any evidence of impairment. We accept Licensees' contention that our per se statute requires a finding of the BAC at the time the defendant was driving. The uniform jury instruction promulgated by our supreme court for Section 66–8–102(C) states as essential elements of the crime:

1. The defendant drove a motor vehicle;

2. *At that time,* he had one-tenth of one percent or more by weight of alcohol in his blood[.] [Emphasis added.]

SCRA 1986, 14–4503 (Cum.Supp.1991). Licensees suggest that the purpose of Section 66–8–112 is to revoke the licenses of those drivers who violate Section 66–8–102(C). That being the case, in their view, a driver's license cannot be revoked unless the State proves that the BAC *at the time of driving* equaled or exceeded .1 percent. The BAC at the time the test is administered would thus be relevant only insofar as that BAC can be related to the licensee's BAC at the time he or she was driving. In short, Licensees ask us to read into Section 66–8–112 a requirement that is not expressed in that section but that appears in Section 66–8–102(C).

■ We reject Licensees' argument. Although we will read the requirements of one portion of a statute into the requirements of another portion in order to avoid an irrational construction of the statute, *see Barela v. Midcon of N.M., Inc.,* 109 N.M. 360, 785 P.2d 271 (Ct.App.1989), we will not engage in such statutory construction when there is a plausible reason for a difference in the requirements under the two statutory provisions. *See Simmons v. McDaniel,* 101 N.M. 260, 680 P.2d 977 (1984). In this case, there is a reason for the difference between the criminal provisions of Section 66–8–102(C) and the li-

cense-revocation provisions of Section 66–8–112 that is more than plausible—it is compelling.

As the above-quoted portions of Section 66–8–112 show, license-revocation proceedings are intended to be greatly expedited. *See State v. Bishop,* No. 12,836, slip op. at 6 (N.M.Ct.App. Mar. 18, 1992) (license-revocation proceeding is "a summary administrative proceeding designed to handle license revocation matters quickly"). The hearing must ordinarily be set within 30 days after receipt of the notice of revocation, § 66–8–112(B), and can be postponed no later than 90 days from the date of notice of revocation. § 66–8–112(C). We have held that failure to conduct a hearing within 90 days of the licensee's arrest deprives MVD of authority to revoke the license. *Weber v. Department of Motor Vehicles State of New Mexico,* 112 N.M. 697, 818 P.2d 1221 (Ct.App.1991). The purpose of this speed is to protect the public by promptly removing from the highways those who drive while intoxicated. To make it possible for the MVD to conduct the numerous necessary hearings within the time constraints of the Implied Consent Act, the legislature could reasonably decide to limit the issues to be considered at such a hearing. Indeed, Section 66–8–112(E) begins with the words, "The hearing shall be limited to the issues:" and lists five issues. In particular, the legislature could properly decide that it did not want hearings prolonged by the testimony of experts and other witnesses that may be necessary to connect the blood alcohol test result with the licensee's BAC at the time he or she was driving.

Of course, we would be reluctant to assume that the legislature established license-revocation procedures in which the issues were so limited that drivers were treated with substantial unfairness. But the statutory provisions create no such unfairness. The only "improper" result that Licensees suggest could follow from our construction of Section 66–8–112 is that one whose license is revoked pursuant to Section 66–8–112 may not have violated Section 66–8–102(C). They point out that because it may take a while for ingested alcohol to enter the bloodstream, the BAC may increase during a period of time after the individual has ceased drinking. Thus, one whose test result indicates a BAC of .1 percent or more may have had a lower BAC when he or she was driving.

The fallacy in this argument is that Licensees assume that the State has no interest in revoking the license of anyone whose BAC while driving was less than .1 percent and who therefore had not violated Section 66–8–102(C). They ignore the more general public interest in halting *all* driving while under the influence of alcohol. Section 66–8–102(A) states, "It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this state." Given the purpose of punishing and deterring violations of Section 66–8–102(A), the legislature could reasonably determine that there is little risk of an "improper" license revocation by restricting evidence at a revocation hearing to the licensee's BAC at the time the test is administered.

Just because one has a BAC of less than .1 percent does not mean that one is not too intoxicated to drive. The legislature has stated that a BAC of less than .05 percent by weight creates a presumption that one was not under the influence of intoxicating liquor, but if the BAC is between .05 percent and .1 percent, "no presumption shall be made that the person either was or was not under the influence of intoxicating liquor." § 66–8–110(B)(2). License revocation under Section 66–8–112 requires not only the necessary test result but also proof that the law enforcement officer had "reasonable grounds to believe the driver was driving a motor vehicle while under the influence of intoxicating liquor or drug." § 66–8–112(F)(1). Proof of probable cause, together with a test result indicating a BAC of .1 percent or more, creates ample justification for revocation of a driver's license on the ground that the licensee was driving while intoxicated. Moreover, even if the licensee had consumed liquor so soon before the arrest that his or her BAC had not increased sufficiently to impair driving ability, the legislature could justify

**700**

license revocation on the ground that people should not be driving right after ingesting so much liquor. We are aware of no public service announcements suggesting that one who wishes to drink and drive should drink quickly and promptly hop behind the wheel.

Thus, the legislature could properly decide that limiting the issues in a revocation proceeding to those set forth in Section 66–8–112(E) would rarely, if ever, result in a license revocation contrary to public policy. Indeed, a much more likely effect of limiting the issues at the revocation hearing is that licenses will not be revoked from some persons who drive while intoxicated; if the BAC at the time of the test is less than .1 percent, then the license cannot be revoked no matter what other evidence there may be of impaired driving.

Case law in other jurisdictions supports our conclusion. First, although there is a split of authority, in those jurisdictions that have enacted per se criminal statutes which require a certain BAC at the time the defendant was driving, the opinions that have analyzed the issue most thoroughly hold that the state makes a prima facie case by presenting the result of the blood alcohol test, even without any evidence relating the test result back to the BAC at the time of driving. *Ransford v. District of Columbia*, 583 A.2d 186 (D.C.1990); *Haas v. State*, 567 So.2d 966 (Fla.Dist.Ct.App.1990); *State v. Larson*, 429 N.W.2d 674 (Minn.Ct. App.1988); *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990); *see State v. Taylor*, 132 N.H. 314, 566 A.2d 172 (1989).[1] *Contra Desmond v. Superior Court*, 161 Ariz. 522, 779 P.2d 1261 (1989) (en banc)[2]; *State v. Geisler*, 22 Conn.App. 142, 576 A.2d 1283 (1990), *vacated on other grounds*, —— U.S. ——, 111 S.Ct. 663, 112 L.Ed.2d 657 (1991);

*State v. Ladwig*, 434 N.W.2d 594 (S.D. 1989); *State v. Dumont*, 146 Vt. 252, 499 A.2d 787 (1985). One court has even held that relation-back evidence is not admissible to defend against a charge of unlawfully operating a motor vehicle with a BAC of .1 percent or more. *State v. Tischio*, 107 N.J. 504, 527 A.2d 388 (1987), *appeal dismissed*, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). If a conviction for driving with a BAC above a certain level can be sustained solely on evidence of a subsequent blood alcohol test, without any relation-back evidence, then it is reasonable for the legislature to enact an expedited procedure that permits license revocation based solely on such a test.

Moreover, our holding agrees with that of the Arizona Supreme Court in a case that is directly on point. In *Desmond* the Arizona court had held that the Arizona criminal statute required evidence relating the test result to the defendant's BAC while driving. In *State ex rel. Ross v. Nance*, 165 Ariz. 286, 798 P.2d 1295 (1990) (en banc), the court interpreted its license-revocation statute which stated:

"The scope of the hearing for the purposes of this section shall include only the issues of whether the officer had reasonable grounds to believe the person was driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor, whether the person was placed under arrest for a violation of § 28–692, *whether a test was taken, the results of which indicated an alcohol concentration of 0.10 or more*, whether the testing method used was valid and reliable and whether the test results were accurately evaluated. The results of the test shall

---

1. Several of these opinions suggest a requirement that the blood-alcohol test be performed within a reasonable time after the defendant was driving. We need not decide whether Section 66–8–112 requires that the test be given within a reasonable time of the arrest, because Licensees have not raised the issue. We fail to see, however, how delaying the test beyond a "reasonable time" could prejudice the licensee. The only way in which the BAC after a long delay could exceed the BAC while driving is if

the licensee consumed alcohol between the time of the arrest and the time of the test, a rather bizarre possibility.

2. The Arizona Legislature has effectively overruled the *Desmond* result by redefining the offense as having a BAC of at least .1 percent within two hours of driving. *See Cacavas v. Bowen*, 168 Ariz. 114, 811 P.2d 366 (Ct.App. 1991).

be admitted on establishing the requirements listed in § 28–692.03 * *."

*Id.* 798 P.2d at 1296–97 (quoting Ariz.Rev. Stat. § 28–694(E)). The court held:

We believe A.R.S. § 28–694 mandates a bright-line rule that administrative suspensions are appropriate when the test results in a reading of 0.10 or more at the time of the test, without regard to a projected reading at the time of driving. This interpretation rationally serves the legislative purpose of expeditiously suspending the licenses of those with test results of 0.10 or more, rather than waiting until and unless the driver is convicted of [driving under the influence].

*Id.* at 1298 (footnote omitted); *see also Knapp v. Miller,* 165 Ariz. 527, 799 P.2d 868 (Ct.App.1990).

Licensees urge us to follow *Collins v. Director of Revenue,* 691 S.W.2d 246 (Mo. 1985) (en banc). Although *Collins* requires that license revocation be based on the licensee's BAC while driving, the Missouri statute, unlike New Mexico's explicitly requires a finding relating to the licensee's BAC while driving. *Collins* is not authority contrary to our holding. Mo.Rev.Stat. § 302.505 (1986).

To sum up, Section 66–8–112 contains no requirement that the blood alcohol test result relate back to the time that the licensee was driving, and there is no need to add such a requirement to rationalize the statute. On the contrary, omission of a relation-back requirement enables the State to provide expedited hearings without causing unfairness to licensees.

Our discussion of the purposes and justifications for not imposing a relation-back requirement answers Licensees' contention that Section 66–8–112, as we construe it, would violate due process.

CONCLUSION

We affirm the district court's affirmance of the license revocation of Bierner and reverse the district court's reversal of the license revocation of Hart.

IT IS SO ORDERED.

DONNELLY and PICKARD, JJ., concur.