877 P.2d 1097

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Abel G. SUAZO, Defendant–Appellee.**

**No. 12771.**

Court of Appeals of New Mexico.

March 17, 1993.

Tom Udall, Atty. Gen., Bruce J. Fort, Special Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Carlos F. Vigil, Santa Fe, for defendant-appellee.

## OPINION

CHAVEZ, Judge.

The state appeals the district court's reversal of the revocation of appellee Abel Suazo's driver's license. Two issues are raised on appeal. First, the state contends Suazo refused to take a chemical breath test as required by NMSA 1978, Section 66-8-107 (Repl.Pamp.1987). Second, the state argues Suazo's refusal to take a chemical breath test was not cured by taking a chemical blood test some two hours after his refusal to take the chemical breath test. We reverse and remand for further proceedings.

### FACTS

Suazo was arrested for driving under the influence of intoxicating liquor or drugs following an accident that occurred at 9:30 p.m. on January 11, 1990. The arrest occurred at the Espanola Hospital where Suazo was first taken after the accident. Suazo was transported from the hospital to the State Police office in Espanola where he was asked to take a breathalyzer test and was advised that refusal to take the test would result in revocation of his driver's license for one year. Suazo agreed to take the breath test and was given three opportunities to blow into the machine, the first occurring at 10:56 p.m. Each time, he failed to breathe hard or long enough to register a result. Officer James

Henderson of the New Mexico State Police, who administered the breath test, then determined that Suazo refused to take the test.

After the attempt to administer the breath test, Officer Henderson transported Suazo to St. Vincent's Hospital in Santa Fe for treatment of injuries Suazo sustained in the accident. Suazo was examined and treated by a doctor at St. Vincent's between midnight and 1:00 a.m. on January 12, 1990. While at the hospital, Suazo, after consultation with counsel, requested that he be allowed to take a blood test. Officer Henderson agreed to Suazo's request and a blood alcohol test was administered shortly after 1:00 a.m.

At the hearing to determine whether Suazo's driver's license should be revoked for refusing to take the breath test, Suazo contended that, because of injuries he sustained in the accident, he was physically unable to blow sufficiently. A letter was introduced from a physician opining that Suazo would have had great difficulty in blowing due to his injuries, and that a blood test would be more accurate than a breath test under the circumstances. Officer Henderson testified, on the other hand, that he had seen no reason why Suazo could not blow into the machine on the night of the accident.

### 1. DID SUAZO REFUSE TO TAKE THE CHEMICAL TEST?

NMSA 1978, Section 66-8-111(B) (Repl. Pamp.1987), provides in pertinent part that a person's license shall be revoked when, upon the request of a police officer, "the person refused to submit to a chemical test after being advised that failure to submit could result in revocation of his privilege to drive...."

NMSA 1978, Section 66-8-112(G) (Repl. Pamp.1987), provides that a person whose license is revoked may seek review of the decision in district court and further:

On review, it is for the court to determine only whether reasonable grounds exist for revocation or denial of the person's license or privilege to drive based on the record of the administrative proceeding.

■ This Court has stated that refusal to submit to a breath test is a question of fact. *See State Dep't of Transp., Motor Vehicle Div. v. Romero*, 106 N.M. 657, 659, 748 P.2d 30, 32 (Ct.App.1987). Although Suazo introduced a letter from a physician supporting his claim that he could not breathe hard enough to properly take the test, the fact finder may disregard expert opinion, even when that opinion is uncontradicted. *See Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 153, 703 P.2d 925, 930 (Ct.App.1985). Here, there was conflicting evidence concerning Suazo's inability to take the breath test and we need only determine if there was substantial evidence to support the hearing officer's determination that Suazo refused the breath test. *See Romero*, 106 N.M. at 659, 748 P.2d at 32.

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* It is not a proper function of either this Court or the district court to reweigh the evidence and to substitute its judgment for that of the hearing officer, so long as the agency's decision is supported by the record. *Id.* at 660, 748 P.2d at 33.

■ The evidence supporting the hearing officer's determination includes the testimony of Officer Henderson. Henderson testified that he could see no physical reason why Suazo could not adequately blow into the breathalyzer. Henderson further testified that it is not difficult to blow sufficiently hard to give an adequate sample. Furthermore, Suazo offered no reason at the time of testing for his failure to adequately blow into the breathalyzer and never suggested that the abrasions of his lip prevented him from taking the test. The hearing officer determined that Suazo refused to submit to a breath test, and there was substantial evidence to support that determination.

In its conclusions of law, the district court found that there was substantial evidence to support Suazo's claim that the "failure to complete the breath test was a result of a physical disability as [a] result of injuries and the shock suffered in the motor vehicle accident...." This, however, was the wrong test. *See State v. Anderson*, 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App.1988) (test is whether the result is supported by substantial evidence, not whether a different conclu-

sion could be reached). Therefore, the district court erred in reinstating Suazo's license to drive on the foregoing basis.

### 2. WAS SUAZO'S REFUSAL TO TAKE THE TEST CURED BY HIS TAKING A BLOOD ALCOHOL TEST?

This is a question of first impression in New Mexico. While there is a division on the question, some jurisdictions have adopted a rule that later consent can cure the original refusal under certain circumstances. NMSA 1978, Sections 66–8–107, –109 and –111 (Repl.Pamp.1987), provide that the law enforcement officer has the authority to select the type of test to be performed under the Implied Consent Act. Should the motorist refuse to take the test offered by the officer, Section 66–8–111 becomes operative. The statute does not provide for a motorist to demand another test to avoid the consequences of the initial refusal.

The Supreme Court of Hawaii allowed a subsequent consent to a chemical test to cure an initial refusal under circumstances when: (1) the subsequent request to take a test is made within a reasonable time after the initial refusal, (2) a test administered upon a subsequent consent would still be accurate, (3) testing equipment or facilities are still readily available, (4) honoring the subsequent request will result in no substantial inconvenience or expense to the police, and (5) the driver has been in police custody and under observation for the whole time since his arrest. *State v. Moore,* 62 Haw. 301, 614 P.2d 931 (1980). *Moore* substantially followed North Dakota's approach on this issue. *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974); *see also Pruitt v. State, Dep't of Pub. Safety,* 825 P.2d 887 (Alaska 1992); *Zahtila v. Motor Vehicle Div., Dep't of Revenue,* 39 Colo.App. 8, 560 P.2d 847 (1977) (unless delay would materially affect test results, a subsequent consent may cure a prior refusal); *State v. Ginnetti,* 232 N.J.Super. 378, 556 A.2d 1339 (Law Div.1989) (initial refusal cured by subsequent consent where momentary delay would not affect integrity of procedure or do violence to purpose of Implied Consent Law). *But see Zidell v. Bright,* 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968); *Robertson v. State*

*ex rel. Lester,* 501 P.2d 1099 (Okla.1972); *Commonwealth, Dep't of Trans. v. Schaefer,* 8 Pa.Commw.Ct. 96, 300 A.2d 907 (1973); *Rouse v. State, Dep't of Pub. Safety,* 261 N.W.2d 418 (S.D.1978); *Currier v. State, Dep't of Motor Vehicles,* 20 Wash.App. 16, 578 P.2d 1325 (1978).

Other jurisdictions do not allow a subsequent test to cure an initial refusal. *See State v. Christopherson,* 217 Mont. 449, 705 P.2d 121 (1985); *see also Cummings v. State,* 118 Idaho 800, 800 P.2d 687 (Ct.App.1990); *Schroeder v. State, Dep't of Motor Vehicles and Pub. Safety,* 105 Nev. 179, 772 P.2d 1278 (1989).

We find the rule promulgated in *Moore* to be the better one. A rule that allows for a subsequent consent to cure an initial refusal in a limited number of cases assures basic fairness to arrestees which an absolute rule preventing any cure of an initial refusal, no matter what the circumstances, cannot. Such a flexible rule promotes fairness to the arrestee and yet provides safeguards to ensure that a subsequent test is accurate and performed without undue inconvenience and expense to the police. We therefore hold, as did the court in *Moore,* "that unless a delay would materially affect the test results or prove substantially inconvenient to administer, a subsequent consent may cure a prior refusal to be tested." *Id.* 614 P.2d at 935. We also adopt the five *Moore* criteria as a basis for making this determination.

We turn now to an application of the *Moore* criteria to the facts of Suazo's case. Under the undisputed facts of this case, the last three of the criteria have been met. At the time of Suazo's request for a blood alcohol test at St. Vincent's Hospital, testing equipment was readily available. Officer Henderson honored Suazo's request for blood testing, which indicates that the subsequent request resulted in no substantial inconvenience or expense to the police. Finally, Suazo had been in police custody and under observation for the entire time since his arrest. While these criteria are not in question, there is a more difficult factual determination to be made on the first two criteria: whether Suazo's subsequent request to have

a blood alcohol test performed was made within a reasonable time after the initial refusal, and whether the subsequent blood test would still be accurate.

Under our holding, Suazo has the burden of establishing by a preponderance of the evidence that his eventual request to take a blood alcohol test was made within a reasonable time. *See Pruitt* 825 P.2d at 894. The record reveals that slightly more than three and one-half hours elapsed between when the accident occurred at 9:30 p.m. and when the blood alcohol test was administered at 1:00 a.m. In absolute terms, a delay of three and one-half hours is unreasonable. When the specific facts of Suazo's case are considered, however, the unreasonableness of the delay becomes much less clear. The accident occurred at 9:30 p.m., but Suazo did not submit to the first breath test until 10:56 p.m., a time lapse of one and one-half hours that must be discounted when considering the reasonableness of Suazo's subsequent request. What is left, then, is a period of approximately two hours. The record further shows that Suazo was transported from the police station in Espanola to St. Vincent's Hospital in Santa Fe where he was treated for injuries by a doctor between midnight and 1:00 a.m. From this record, we cannot say that the delay before Suazo's subsequent request was unreasonable where part of that time was spent in transport between Espanola and Santa Fe and part was spent in Suazo receiving medical treatment for the injuries he sustained in the accident. The same is true in determining from the record whether Suazo met his burden of establishing that the subsequent blood alcohol test still would have been accurate where he presented a physician's opinion that the blood alcohol test would have been more accurate than a breath test.

From the foregoing discussion, it should be apparent that application of the *Moore* criteria must be made on a case-by-case basis. While the instant case presents a question of fact stemming from a delay of three hours under unusual circumstances, we do not believe this will typify the facts in most cases which will raise the issue of whether a subsequent consent operates to cure an initial

refusal under the Implied Consent Act. The test we adopt today follows the lead of other states and has established no bright-line rule. It requires nothing more nor less than a factual determination using five specific criteria, which is well within the bounds of the summary administrative proceeding established to handle civil license revocation matters expeditiously. Thus, the concerns expressed in the dissent that our holding "goes far beyond any other court in the country" and that it will burden the existing administrative procedures for license revocations are unfounded.

The hearing officer at Suazo's license revocation hearing never determined the issues of the reasonableness of the delay or the accuracy of the subsequent test. Just as it was not proper for the district court in this case to reweigh the evidence and substitute its judgment for that of the hearing officer, it would be equally improper for us to decide from the record a factual issue never reached at the administrative hearing. *See Barnett & Casbarian, Inc. v. Ortiz,* 114 N.M. 322, 838 P.2d 476 (Ct.App.1992) (where worker's compensation judge apparently applied incorrect legal standard, remand for reconsideration of disability award appropriate). Remand is appropriate where, as here, this court announces new standards to be applied in the present case. *See State v. Savage,* 115 N.M. 250, 849 P.2d 1073 (Ct.App.1992); *State v. Irvin,* 114 N.M. 597, 844 P.2d 847 (Ct.App. 1992). We therefore reverse and remand this case to the district court with instructions to order further proceedings at the administrative level to determine whether the second test should act as a cure to the initial refusal. The criteria adopted in this opinion are to be used in making this determination.

**IT IS SO ORDERED.**

APODACA, J., concurs.

HARTZ, J., concurs in part, dissents in part.

HARTZ, Judge (concurring in part, dissenting in part).

I agree with the majority that the district court erred in overturning the hearing offi-

cer's determination that Suazo refused to take the breath test. I dissent, however, from the majority's ruling that we must remand to determine whether Suazo's consent to take a later test cured his initial refusal. We should reverse the district court's reversal of the revocation of Suazo's license.

In its pursuit of "basic fairness," the majority goes beyond any other court in the country in giving a second chance to suspected intoxicated drivers who have already made an informed choice not to submit to a chemical test of their blood alcohol content (BAC). The rule created by the majority opinion will obstruct the enforcement of New Mexico's laws governing driving while intoxicated (DWI).

Our task here is to interpret NMSA 1978, Section 66–8–111(B) (Repl.Pamp.1987), which states:

> The director [of the division of motor vehicles (DMV)], upon receipt of a statement signed under penalty of perjury from a law enforcement officer stating that he had reasonable grounds to believe the arrested person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drug and that, upon his request, the person refused to submit to a chemical test after being advised that failure to submit could result in revocation of his privilege to drive, shall revoke the person's New Mexico driver's license or any nonresident operating privilege for a period of one year.

Nothing in the statutory language suggests that a driver can cure a refusal by a later offer to submit to a chemical test.

A clear majority of jurisdictions that have considered the issue permit no cure after a driver has refused to consent to a chemical test for intoxication. *Zidell v. Bright,* 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968); *People v. Graziano,* 151 Ill.App.3d 475, 104 Ill. Dec. 325, 328, 502 N.E.2d 822, 825 (Ct.1986); *Hoffman v. Iowa Dep't of Transp.,* 257 N.W.2d 22 (Iowa 1977); *Humphries v. Commonwealth,* 807 S.W.2d 669 (Ky.Ct.App. 1991); *State v. Landry,* 428 A.2d 1204 (Me. 1981); *Dudenhoeffer v. Director of Revenue,* 780 S.W.2d 701 (Mo.Ct.App.1989); *Johnson v. Division of Motor Vehicles,* 219 Mont. 310,

711 P.2d 815 (1985); *Wisch v. Jensen,* 221 Neb. 609, 379 N.W.2d 755 (1986); *State v. Bernhardt,* 245 N.J.Super. 210, 584 A.2d 854 (App.Div.1991); *Nicol v. Grant,* 117 A.D.2d 940, 499 N.Y.S.2d 247 (1986); *Skinner v. Motor Vehicles Div.,* 107 Or.App. 529, 812 P.2d 46 (1991); *Cunningham v. Commonwealth, Dep't of Transp.,* 105 Pa.Commw.Ct. 501, 525 A.2d 9 (1987); *Peterson v. State,* 261 N.W.2d 405 (S.D.1977); *Conrad v. Schwendiman,* 680 P.2d 736 (Utah 1984); *Currier v. State, Dep't of Motor Vehicles,* 20 Wash.App. 16, 578 P.2d 1325 (1978).

In addition, three jurisdictions indicate that they will allow a cure only when the driver offers to submit to a test "almost immediately" after an initial refusal. *Harlan v. State,* 113 N.H. 194, 308 A.2d 856 (1973); *Schultz v. Commissioner of Pub. Safety,* 447 N.W.2d 17 (Minn.Ct.App.1989); *In re Brooks,* 27 Ohio St.2d 66, 271 N.E.2d 810 (1971). The rationale of this exception appears to be that in such circumstances there is not an actual refusal to submit to testing. *See Schultz v. Commissioner of Pub. Safety.* Courts in these jurisdictions strictly construe "almost immediately." *See Mossak v. Commissioner of Pub. Safety,* 435 N.W.2d 578 (Minn.Ct.App.1989) (consent was ineffective although only five to ten minutes after refusal); *Bowman v. McCullion,* 21 Ohio App.3d 138, 486 N.E.2d 1225 (1985) (retraction not timely when made five minutes after refusal).

The majority opinion in this case adopts the minority rule that permits a cure in certain circumstances. *Pruitt v. State, Dep't of Pub. Safety,* 825 P.2d 887 (Alaska 1992); *State v. Hoover,* 151 Ariz. 470, 728 P.2d 689 (Ct.App.1986); *Zahtila v. Motor Vehicle Div.,* 39 Colo.App. 8, 560 P.2d 847 (1977); *Larmer v. State, Dep't of Highway Safety,* 522 So.2d 941 (Fla.Dist.Ct.App.1988); *State v. Moore,* 62 Haw. 301, 614 P.2d 931 (1980); *In re Smith,* 115 Idaho 808, 770 P.2d 817 (Ct.App.1989); *Standish v. Department of Revenue,* 235 Kan. 900, 683 P.2d 1276 (1984); *Pickard v. State, Dep't of Pub. Safety,* 572 So.2d 1098 (La.Ct.App.1990); *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974). *See Mathis v. North Carolina Div. of Motor Vehicles,* 71 N.C.App. 413, 322 S.E.2d 436 (1984) (statute provides driver thirty minutes to make a

decision regarding whether to submit to test). The test generally adopted in these jurisdictions is the one first set forth in *Lund v. Hjelle,* 224 N.W.2d at 557:

> [T]he subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

Some jurisdictions have added glosses to this test, such as requiring that the cure be within "a *very short* and reasonable time," *Standish,* 683 P.2d at 1280 (emphasis added), or that the delay not "materially affect the test results," *Moore,* 614 P.2d at 935; *accord Zahtila; In re Smith.*

Even under the minority rule, I doubt that remand is appropriate in this case. I find it significant that there appear to be no reported cases following *Lund v. Hjelle* in which the delay between the refusal and an effective cure was greater than one half hour. In *Lund v. Hjelle* itself the court remanded for a hearing on whether the criteria stated in the opinion were satisfied by an offer to take the test almost an hour after the refusal, but the North Dakota Supreme Court has more recently indicated that it will strictly apply the criteria set forth in *Lund v. Hjelle. Asbridge v. North Dakota State Highway Comm'r,* 291 N.W.2d 739, 750 (N.D.1980). In any event, there is no precedent for finding a cure two hours after a refusal, as occurred in this case.

My chief concern, however, is not that the majority opinion has misapplied the minority rule. My concern is with the minority rule itself. The two reasons given to support a rule permitting cures are that such a rule is fair and that the rule will further the statutory policy of encouraging drivers to submit to chemical tests. *See, e.g., Pruitt,* 825 P.2d at 894; *Gaunt v. Motor Vehicle Div.,* 136 Ariz. 424, 666 P.2d 524, 527 (Ct.App.1983); *In re Smith,* 770 P.2d at 820–21. But the opinions do not satisfactorily explain why it is unfair to hold a driver responsible for making an informed decision to refuse to submit to a test. Nor do they explain how allowing cures will encourage drivers to submit to chemical tests. Presumably police officers in these jurisdictions do not tell drivers who have refused to submit: "Sorry, I wasn't really telling the truth when I warned that your refusal would require a suspension of your license. If you change your mind soon enough, we won't suspend your license." Yet if officers do not provide such advice, drivers will not be influenced by judicial pronouncements establishing a right to cure a refusal. (I doubt that courts are suggesting that drivers be told of the right to cure when they are first requested to submit to a BAC test. Such a practice would likely reduce compliance.)

Perhaps one reason that courts do not find it necessary to expound upon the justifications for a cure rule is that they assume that the rule will cause no significant harm. For example, courts do not allow a driver to retract a refusal when honoring a request for a test will result in "substantial inconvenience or expense to the police" *Lund v. Hjelle,* 224 N.W.2d at 557. The North Dakota Supreme Court asserted that its rule would not frustrate the legislative purpose of its state's Implied Consent Law. *Id.*

The opinions do not, however, recognize every means by which permitting cures can cause substantial harm. To be specific, the opinions adopting the minority rule have ignored a consideration that is very important in the New Mexico statutory scheme for the revocation of driver's licenses of those suspected of DWI—allowing cures would burden the system for civil revocation of licenses. The New Mexico legislature has established "a summary administrative proceeding designed to handle license revocation matters quickly." *State v. Bishop,* 113 N.M. 732, 735, 832 P.2d 793, 796 (Ct.App.1992). NMSA 1978, Section 66–8–112(E) (Cum.Supp.1992), states that a hearing on a revocation of license under the Implied Consent Act is limited to the following five issues:

(1) whether the law enforcement officer had reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor;

(2) whether the person was arrested;

(3) whether this hearing is held no later than ninety days after notice of revocation; and either

(4)(a) whether the person refused to submit to a test upon request of the law enforcement officer; and

(b) whether the law enforcement officer advised that the failure to submit to a test could result in revocation of the person's privilege to drive; or

(5)(a) whether the chemical tests were administered pursuant to the provisions of the Implied Consent Act [66-8-105 to 66-8-112 NMSA 1978]; and

(b) the test results indicated a blood alcohol content of one-tenth of one percent or more by weight if the person is eighteen years of age or older or a blood alcohol content of five one-hundredths of one percent or more by weight if the person is less than eighteen years of age.

We recently held in *Bierner v. State*, 113 N.M. 696, 831 P.2d 995 (Ct.App.1992), that the BAC at issue in a license-revocation hearing is the BAC at the time of the test, not at the time that the licensee was driving. Our specific holding was that the state did not need to provide expert testimony relating the test result to the licensee's BAC at the time the licensee was actually driving. We based our holding on the clear language of the statute but found support in the evident legislative purpose of conducting revocation hearings in an expedited manner. *See* Section 66-8-112(B) (hearing must ordinarily be set within thirty days after receipt of notice of revocation); Section 66-8-112(C) (hearing can be postponed no later than ninety days from date of notice of revocation). As we stated: "[T]he purpose of this speed is to protect the public by promptly removing from the highways those who drive while intoxicated. To make it possible for the MVD to conduct the numerous necessary hearings within the time constraints of the Implied Consent Act, the legislature could reasonably decide to limit the issues to be considered at such a hearing." *Bierner*, 113 N.M. at 699, 831 P.2d at 998. We added, "[T]he legislature could properly decide that it did not want hearings prolonged by the testimony of experts and other witnesses that may be necessary to connect the blood alcohol test result with the licensee's BAC at the time he or she was driving." *Id.*

We would undermine the legislative purpose of conducting expedited hearings if we engrafted a sixth issue—whether a refusal to submit to a chemical test was cured by a later offer to submit—onto the five issues which the legislature stated to be the only ones to be considered at a license-revocation hearing. In particular, license-revocation proceedings should not be burdened by testimony relating to the extent to which Suazo's BAC may have dropped during the two hours between his refusal to submit to a test and his later request for a test. This is just the sort of testimony excluded by our holding in *Bierner*. We should not allow cures of refusals when permitting such cures would complicate and delay license-revocation proceedings. As already mentioned, the courts that have permitted cures do not permit a driver to retract a refusal when honoring a request for a test would cause "substantial inconvenience or expense to the police." *Lund v. Hjelle*, 224 N.W.2d at 557. An adverse effect on the administration of license-revocation proceedings should be just as much of a concern as an adverse impact on police operations. Therefore, I would reverse the district court's reversal of the revocation of Suazo's driver's license. I would leave for another day the question of whether to allow an "almost immediate" retraction.