This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                        **No. 33,653**

**WILLIAM A. BARRERAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

**{1}** Defendant, with a deputy sheriff purposefully hiding in Defendant's blind spot some two to three car lengths behind, was eventually pulled over after the deputy concluded that Defendant had failed to signal a turn while changing lanes to enter the freeway and that the deputy was, by virtue of his following Defendant, "affected" by Defendant's failure to signal under NMSA 1978, Section 66-7-325(A) (1978).

**{2}** Defendant appealed his convictions for failure to signal and aggravated driving while under the influence of liquor or drugs (DWI). He also appealed the denial of his motion to suppress all evidence obtained following the traffic stop citing *State v. Anaya*, 2008-NMCA-020, 143 N.M. 431, 176 P.3d 1163, *abrogated on other grounds by State v. Dopslaf*, 2015-NMCA-098, 356 P.3d 559. Accordingly, we evaluate whether the deputy's stop of Defendant was invalid for having made a mistake of law, in the context of whether the deputy had reasonable suspicion to stop Defendant. Defendant does not claim a pretextual stop or a violation of Article II, Section 10 of the New Mexico Constitution. Review of an order granting or denying a suppression motion is a mixed question of law and fact. *Anaya*, 2008-NMCA-020, ¶ 5. We view the facts "in the light most favorable to the prevailing party and defer to the [trial] court's findings of fact if those findings are supported by substantial evidence." *Id*. We review de novo the application of the law to the facts. *Id*.

**{3}** The effect of Defendant's actions on the deputy's driving was largely a product

2

of the deputy's pursuit of Defendant until a final violation was committed. However, in this case, this determination is factual and not based on any mistake of law on the part of the deputy. *See id.* ¶¶ 7, 15; *see also State v. Hubble*, 2009-NMSC-014, ¶ 27, 146 N.M. 70, 206 P.3d 579 ("In essence, the second part of the *Anaya* proposition [that reasonable suspicion on a basis other than the mistake of law can justify the stop] is our objective test for reasonable suspicion."). Our de novo review of whether the detention was justified requires that the metropolitan court's ruling must be supported by substantial evidence and in light of the totality of the circumstances. *Hubble*, 2009-NMSC-014, ¶ 5. Last, we review Defendant's DWI conviction and determine whether it was based on substantial evidence capable of supporting the metropolitan court's verdict beyond a reasonable doubt.

{4}     Because we determine that substantial evidence supports Defendant's convictions for failing to signal and DWI beyond a reasonable doubt, we affirm his convictions for the violations. We also hold that the deputy's stopping Defendant was adequately supported by reasonable suspicion.

**DISCUSSION**

{5}     The parties are familiar with the facts and, for the sake of brevity in this Opinion, we present only such facts as are needed for our discussion of the issues. There is no dispute between the parties as to the facts of this case.

# I. Failure to Signal

{6} "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. Section 66-7-325(A) provides in relevant part that "[n]o person shall . . . turn any vehicle without giving an appropriate signal . . . in the event any other traffic may be affected by such movement." The two elements in the statute that must be satisfied in order for its mandate to be triggered are "(1) there must be other traffic (2) that may be affected by the motorist's turn." *Hubble*, 2009-NMSC-014, ¶ 11 (internal quotation marks and citation omitted). The failure to signal is not a *per se* infraction. *Anaya*, 2008-NMCA-020, ¶ 3. However, absent a determination that the failure could have affected traffic, the offense is not established. *Id*.

{7} The metropolitan court found that the deputy was affected by Defendant's failure to use his turn signal at the time he pulled onto the freeway. The metropolitan court found Defendant guilty of the failure to signal at the point he crossed the line from the on-ramp lane into the right hand lane of traffic on I-25. The on-ramp to I-25 at that point also became a marked exit and off-ramp from I-25; moving onto the interstate was most certainly a lane change for which Section 66-7-325(A) required a signal if traffic was to be affected.

**{8}** The deputy testified that he was affected because he had to change his driving behavior as a result of what Defendant did because he did not know if Defendant would enter the freeway or continue down the exit ramp lane that they were both on. Defendant could have gone in either direction by moving to the left (as he did) or proceeding straight to the off-ramp and traffic light below. Since the deputy was following behind him, the deputy's actions depended on Defendant's direction of travel, signaled or not. Immediately preceding this maneuver, the deputy was hiding in Defendant's blind spot in the right lane to avoid being seen.[1] However, that the deputy's own pursuit of Defendant was the cause of the effect is of no consequence. There is no doubt that the deputy himself was "traffic" under the statute. *See Hubble*, 2009-NMSC-014, ¶ 12. More innocuous traffic, had there been any, might well have been similarly affected by Defendant's failure to signal by having to wait to see which lane Defendant would proceed before themselves choosing to enter or exit the freeway behind him.

**{9}** Defendant's reliance on *Hubble* and *Anaya* is unavailing in this case with regard to whether the deputy had reasonable suspicion to stop him. The interpretation of Section 66-7-325 in *Hubble* defines a violation as not signaling when there is no more than a "reasonable possibility that other traffic may be affected." 2009-NMSC-014,

---

[1]"I'm in his blind spot because I don't want him to see my car."

5

¶ 13. It does not depend, as Defendant wishes, on whether the unsignaled maneuver was safely accomplished or whether any evasive action was needed on the deputy's part. Defendant's conduct falls within that prohibited by Section 66-7-325(A). Whether the deputy was affected by Defendant's driving is a question of fact, not law. *See Hubble*, 2009-NMSC-014, ¶ 32. The deputy's "determinations—that he, while driving his vehicle on the highway, was 'traffic,' [and the deputy's description] that he 'may have been affected' by [the d]efendant's turn—[were based on] facts that were material to the transaction." *Id.* (alterations, internal quotation marks, and citation omitted). The metropolitan court determined that in entering the freeway without signaling, the deputy's travel on the road was affected, and we agree. Applying an objective standard to these facts, the deputy operated under no mistake of law, and Defendant violated the signal statute. Reasonable suspicion for the stop existed based on the facts, and Defendant's conviction for failing to signal was supported by substantial evidence.

**II.   DWI**

{10}   Turning from the validity of Defendant's traffic stop and the denial of his motion to suppress, Defendant argues that substantial evidence does not support his conviction for aggravated DWI beyond a reasonable doubt. As discussed below, there is no chemical test in this case. The evidence of Defendant's driving and demeanor

6

when stopped comprise the bounds of the evidence the metropolitan court considered. We recognize that Defendant's driving was not in question for the considerable time he was observed by the deputy. However, his taking a wide left turn into the deputy's lane is germane, as is the deputy's impression that driving two exits down before pulling over after the deputy engaged his lights was an indicator that Defendant's faculties were impaired. Additionally, the deputy testified that the odor of alcohol on Defendant's person was peculiarly strong after he got out of his car and was standing roadside.

{11}     Defendant's eyes were bloodshot and watery, and he had come from a bar, though he denied drinking. When asked to perform standardized field sobriety tests (SFSTs), Defendant delayed before consenting. The deputy thought this was significant, and we note that refusal to perform the tests can be evidence of his consciousness of guilt. *State v. Sanchez*, 2001-NMCA-109, ¶ 9, 131 N.M. 355, 36 P.3d 446 (holding that refusal to participate in SFSTs can be used by the state to establish consciousness of guilt on the defendant's part). He forgot to unbuckle his seat belt when he got out of his car to do the tests. However, his performance on the field sobriety tests was equivocal, with small but notable defects in his performance, including not following instructions, and swaying significantly as he stood roadside. Despite Defendant stating that he was affected by a condition that caused him to shake

7

at times, the deputy testified that he observed no shaking.

{12} The deputy testified that with his experience in DWI enforcement, he was confident in his assessment that Defendant was under the influence, and directed Defendant to take a breath test. Defendant initially agreed, but then declined, stating that he did not understand the Implied Consent Act warnings—specifically how it was that he did not have to take it, but refusing to take it would be a criminal act. Testimony about the discussions between the deputy and Defendant indicated a disconnect between what was expected of Defendant and what Defendant said he understood about his situation. The deputy testified that he left the option to take the test open for Defendant through their entire encounter; Defendant maintained his confusion about the Implied Consent Act and stated that as a result he would not take the test. Evidence of refusing a breath test is properly argued to constitute evidence of his consciousness of guilt of DWI. *See State v. Soto*, 2007-NMCA-077, ¶ 34, 142 N.M. 32, 162 P.3d 187 ("A jury may infer [a d]efendant's consciousness of guilt and fear of the test results from [the d]efendant's refusal to take a breath test.").

{13} The metropolitan court found defendant guilty of the charges, specifically mentioning that the standard is whether Defendant's driving ability was impaired to the slightest degree. The court's assessment of the deputy's observations, demeanor, and testimony from the stand increased his credibility with the court. It found that

although many of the defects in Defendant's roadside demeanor and performance might not have had individual significance to any great degree, the sum total of them, from the strong odor of alcohol through errors in the SFSTs and Defendant's confused conversation around the deputy's repeated advising of the Implied Consent Act warning and Defendant's getting the instructions wrong was attributable to impairment by alcohol. The court believed that in light of the "physical and mental manifestations" of Defendant's intoxication and that his refusing the breath test was a choice propelled by his consciousness of guilt, and an intentional act, thus convicting Defendant of the aggravating factor.

{14} Our task is to "indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). The metropolitan court judge was free to draw her own conclusions from the evidence. *State v. Baldwin*, 2001-NMCA-063, ¶ 16, 130 N.M. 705, 30 P.3d 394 (pointing out that a fact finder can rely on "human experience" in deciding whether a defendant was under the influence and could "drive an automobile in a prudent manner"). Either direct or circumstantial evidence may support a conviction, *State v. Mailman*, 2010-NMSC-036, ¶¶ 23, 28, 148 N.M. 702, 242 P.3d 269, and Defendant's behavior "before, at, and after the time of driving" is relevant to the court's determination. *State*

*v. Cavanaugh*, 1993-NMCA-152, ¶ 10, 116 N.M. 826, 867 P.2d 1208. To the extent Defendant argues the effect of the equivocal nature of much of the evidence, we are not required to consider the "merit of evidence that may have supported a verdict to the contrary." *State v. Vigil*, 1990-NMSC-066, ¶ 6, 110 N.M. 254, 794 P.2d 728. We note that even with regard to the shaking disorder Defendant says affects him, he did not testify that it influenced his behavior or performance during the investigation of the case.

{15}     Evaluating the evidence under the foregoing standard of review, we conclude that Defendant's physical symptoms, occasional confusion and delay in responding to the deputy, minor traffic transgressions, and refusal to take a breath test—even if because of confusion from being asked to take a test the refusal of which would carry a criminal penalty—could properly be considered as evidence of some impairment of his mental functioning that was within the trial court's purview to regard as signs that Defendant was under the influence of alcohol to the slightest degree, warranting conviction for DWI. Evidence of Defendant's refusal was sufficient to aggravate his DWI conviction. We therefore affirm Defendant's convictions.

{16}     **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

10

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**