This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                    **NO. 34,392**

**CALEB FREED,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Twila A. Hoon
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

**{1}** Following a bench trial in the metropolitan court (the trial court), Defendant Caleb Freed was convicted of driving under the influence of intoxicating liquor (DWI) under the impaired to the slightest degree standard, contrary to NMSA 1978, Section 66-8-102(A) (2010). He appealed to the district court, which affirmed his conviction. On appeal to this Court, Defendant challenges the admission of his IR 8000 intoxilyzer breath alcohol test (BAT) results, claiming that the State failed to lay a proper foundation for their admission. He also challenges the sufficiency of the evidence to support his conviction. We affirm.

**DISCUSSION**

**{2}** As to DWI, based on the totality of the circumstances recounted by the district court (none of which included the BAT results), the trial court found that Defendant was impaired to the slightest degree and was guilty of DWI. In Defendant's statement of issues filed in his district court appeal, Defendant carefully reviewed the testimony and discussions in the trial court and stated that he objected to admission of the BAT results because "the simulator as equipment does require its own certification from [the Scientific Laboratory Division (SLD)] pursuant to 7.33.2.15(B)(1) [NMAC]." In the argument in his statement of issues, however, Defendant for the first time relied on several regulations apparently not raised in the trial court, and substituted "approved" by SLD for "certified" by SLD; then argued extensively as to why

admission of the BAT results constituted error because of the lack of approval by SLD of the simulator. The district court noted that "[n]either the regulations nor the parties explain what the difference is—or whether there is a difference between—the canister, the gas, and the simulator." The district court concluded that it need not reach the foundational questions because any error in admission of the BAT results was harmless, relying on the following reasoning.

> [Defendant's] breath[]test results were .07 and .07; this evidence was relevant only to demonstrate the presence of alcohol in his system. [Defendant] testified he drank three beers and a shot an hour to an hour and a half before driving. Although this [c]ourt is mindful of the heavy weight the fact-finder can give to a breath[]test result, in the present case, [Defendant's] admissions regarding the quantity and timing of his drinking provide an ample basis for a finding of impairment by alcohol. The trial court further did not reference the breath[]test result in its findings, despite the admission of the evidence. Evidence of the .07 breath[]test results therefore did not reasonably contribute to [Defendant's] conviction under these circumstances.

(Citations omitted.)

{3}     Defendant raises three issues on appeal to this Court: (1) the evidence was insufficient to support the trial court's finding that he was impaired to the slightest degree by alcohol and unable to safely operate a vehicle; (2) the trial court abused its discretion in admitting his BAT results into evidence when the State failed to establish that the simulator attached to the IR 8000 intoxilyzer used to test his blood alcohol content was approved by SLD; and (3) the trial court impermissibly shifted the burden

to Defendant when the State failed to show compliance with accuracy-ensuring requirements. We first address Defendant's sufficiency of evidence point. We then address Defendant's points in regard to admission of the BAT results and any shifting of the burden of proof.

**I.     Sufficiency of the Evidence**

**{4}**     Defendant argues that the State presented insufficient evidence to prove beyond a reasonable doubt that he was impaired to the slightest degree by alcohol and unable to operate a vehicle safely. We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2015-NMCA-073, ¶ 23, 352 P.3d 702 (internal quotation marks and citation omitted), *aff'd*, 2016-NMSC-011, ___ P.3d ___. In that light, "we examine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{5}**     "It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." Section 66-8-102(A). To find Defendant guilty of DWI under the impaired to the slightest degree standard, the State was required to prove beyond a reasonable doubt that Defendant "was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand

4

necessary to handle a vehicle with safety to the driver and the public as a result of drinking [alcohol]." *State v. Gurule*, 2011-NMCA-042, ¶ 7, 149 N.M. 599, 252 P.3d 823 (internal quotation marks and citation omitted); *see also State v. Sisneros*, 1938-NMSC-049, ¶ 18, 42 N.M. 500, 82 P.2d 274 (discussing the impaired to the slightest degree standard).

{6}    Defendant does not dispute that he drove within the state after he consumed alcohol. Indeed, he admitted that he consumed alcohol prior to driving up to the sobriety checkpoint. Instead, Defendant contends that the evidence was "insufficient to create a nexus between any drinking and any driving that was impaired by the drinking." We are not persuaded.

{7}    Evidence also showed that Defendant drove into the sobriety checkpoint at an abnormally high speed—between thirty to forty miles per hour—despite the presence of signs advising drivers to reduce their speed, ten to twelve uniformed police officers, safety equipment, and orange cones on the roadway. Additionally, Defendant did not immediately respond to the flashing lights, hand signals, or shouts from officers, and when Defendant finally stopped at the sobriety checkpoint, he did so abruptly.

{8}    Further, Officer Hunt testified as follows. He contacted Defendant at the driver side window and observed that Defendant had bloodshot, watery eyes and a strong odor of alcohol coming from his facial area. Defendant admitted that he had consumed

"three beers and a shot" about "an hour to an hour and a half" prior to driving up to the sobriety checkpoint. Defendant failed to follow directions and demonstrated numerous difficulties performing the field sobriety tests. During the walk-and-turn test, Defendant stepped off the line multiple times, paused on the ninth step and then continued to take a total of fourteen steps in one direction, turned the wrong direction, and then took sixteen steps in the opposite direction. During the one-leg-stand test, Defendant had a noticeable circular sway, and he put his foot down once.

{9} We acknowledge Defendant's arguments that contrary evidence was presented, including that he did not have slurred speech; he had no difficulty getting out of his vehicle; he did not stumble, trip, or fall; he answered all questions coherently; he stopped at the proper person in the sobriety checkpoint and no one had to get out of the path of his vehicle; and the trial court dismissed the careless driving charge against him. *See* NMSA 1978, § 66-8-114 (1978) (prohibiting careless driving). However, we do not reweigh the evidence on appeal. *See State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156 ("[An appellate] court does not weigh the evidence and may not substitute its judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." (internal quotation marks and citation omitted)); *see also State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because

the [fact-finder] is free to reject [the d]efendant's version of the facts."); *State v. McGhee*, 1985-NMSC-047, ¶ 17, 103 N.M. 100, 703 P.2d 877 ("The determination of the weight and effect of the evidence, including all reasonable inferences to be drawn from both the direct and circumstantial evidence is a matter reserved for determination by the trier of fact.").

{10}     Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to support the trial court's determination of guilt based on DWI impaired to the slightest degree. *See State v. Neal*, 2008-NMCA-008, ¶ 27, 143 N.M. 341, 176 P.3d 330 ("Given the testimony as to [the d]efendant's driving behavior, physical condition, admission of drinking, and performance on the field sobriety tests, the fact[-]finder could rely on common knowledge and experience to determine whether [the d]efendant was under the influence of alcohol."); *State v. Baldwin*, 2001-NMCA-063, ¶ 16, 130 N.M. 705, 30 P.3d 394 (pointing out that a fact-finder can rely on "human experience" in deciding whether a defendant was under the influence and could "drive an automobile in a prudent manner").

**II.     Foundation for Admission of BAT Results and Burden; Lack of Preservation**

{11}     The trial court admitted Defendant's BAT results of 0.07/0.07 into evidence. Defendant asserts that the trial court abused its discretion by admitting the BAT results into evidence when the State failed to lay a proper foundation as required under

7

SLD regulations. Defendant specifically contends that the State failed to present evidence that the gas simulator used was approved by SLD. And he contends that the trial court impermissibly shifted the burden of proof to him when the State failed to show compliance with accuracy-ensuring requirements regarding the use of approved equipment.

{12}     In response, the State argues that Defendant failed to preserve the foundation and burden-shifting issues, and even if the foundation issue was preserved, the State satisfied the foundational prerequisites at issue. The State further asserts that, to the extent that the trial court erred by admitting the BAT results into evidence, the error was harmless.

**A.     Preservation**

{13}     The State acknowledges that at trial defense counsel made a foundational objection to the admission of the BAT results, but argues that Defendant did not challenge whether the simulator had to be or had been "approved" by SLD. Instead, Defendant argued only that the simulator is "equipment" under 7.33.2.15(B)(1) NMAC, and under that same regulation, the simulator had to be "certified." *See id.* (providing that breath samples "shall be collected and analyzed pursuant to the procedures prescribed by SLD and employing only SLD approved equipment and certified instruments"). The State argues that Defendant's argument in the trial court

that the simulator, as equipment, must be "certified" is a different issue than Defendant now raises on appeal, which is whether the State laid a proper foundation to show that the simulator had been "approved" by SLD. And the State argues that "any question [Defendant] raised about whether equipment was 'certified' not only lacked legal relevance, it did not invoke an intelligent ruling on whether the equipment was approved." *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)); Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked.").

{14}    At trial, when the State offered the BAT results into evidence, the trial court reserved ruling and permitted defense counsel to conduct a voir dire examination of Officer Hunt, who had testified regarding certification of the IR 8000 intoxilyzer. Officer Hunt testified that the simulator was "purchased from CMI, however, the gas was made by ILMO, which is on the New Mexico SLD-approved list for gas canisters." He testified further that CMI was the manufacturer of the IR 8000 intoxilyzer, which is also the entity from which the Albuquerque Police Department

purchases dry gas canisters. In addition, Officer Hunt stated that the gas from the canister pumps into the simulator by pressure within the canister, without the use of a separate electronic device, and the intoxilyzer takes a reading. He also testified that the IR 8000 intoxilyzer was certified by SLD. Amidst this testimony, defense counsel indicated that "the case is not about gas canisters really, it's really about the simulator[.]"[1]

{15} After voir dire, when the State again offered the BAT results in evidence, Defendant objected and specifically argued that the State was required to show that the simulator was certified—separate and apart from the IR 8000—because the simulator is equipment and requires its own certification from SLD, pursuant to 7.33.2.15(B)(1) NMAC. In support of his foundation argument, Defendant referred to a memorandum opinion from the Second Judicial District Court, which Defendant characterized as involving a similar issue. Following a short recess to permit the prosecutor an opportunity to review the opinion, and after considering arguments by the parties, the trial court determined that the machine, i.e., the IR 8000 intoxilyzer was certified and that the equipment, i.e., the simulator, would have been certified,

---

[1] The parties, the trial court, and the district court appear to use "gas canister" and "gas simulator" interchangeably. It was incumbent on Defendant to explain in what manner the simulator was an accuracy-ensuring piece of equipment requiring a separate approval from SLD.

10

and the court overruled Defendant's objections and admitted the BAT results into evidence.

**{16}** We agree with the State that Defendant failed to preserve the error he now asserts. Defendant's argument at trial that the simulator be "certified" is not the same argument that he now makes—i.e., that "approval" of the simulator is required and that failure to provide proof of approval resulted in foundational gaps. The contents of the Second Judicial District Court memorandum opinion are not in the record. We have no indication what the memorandum opinion stated or of the extent, if any, to which the trial court was alerted to any detail or specific analysis in the opinion regarding any separately required SLD approval of the simulator. Other than the one general regulation, 7.33.2.15(B)(1) NMAC, Defendant did not alert the trial court to any regulation that more specifically related to simulators or any SLD-approval process. *See, e.g.*, 7.33.2.7(I), (L) NMAC; 7.33.2.12(A)(2)(iii), (iv) NMAC; 7.33.2.14(C)(2)(b)(i), (ii) NMAC. Furthermore, Defendant failed to argue how and why a separate approval, as opposed to the intoxilyzer certification, was required for accuracy assurance. Given the evidence that the IR 8000 intoxilyzer utilized for Defendant's BAT results was certified by SLD and was the instrument that took the readings from the simulator by the process of the pressurized canister pumping gas into the simulator and the evidence that the canister was manufactured by an SLD-

approved supplier, in order to adequately alert the trial court to the significance and guts of his position, it was incumbent on Defendant to specifically explain how the regulations required a separate SLD approval of the simulator and why the certification of the IR 8000 intoxilyzer was insufficient. Defendant failed in that regard, and we therefore agree with the State that Defendant failed to preserve his present objection to admission of the BAT results.

{17}     We also agree with the State as to the second preservation issue, i.e., the burden-shifting issue. The State contends that because Defendant did not present to the district court the burden-shifting argument he now advances on appeal, Defendant abandoned this issue. *See State v. Gutierrez*, 1996-NMCA-001, ¶ 3, 121 N.M. 191, 909 P.2d 751 (stating that "reference to an argument, allegedly made in metropolitan court, does not specifically apprise the district court of the nature of the claimed error, and[] in fact, the district court did not address this issue" and stating that the defendant did not file a motion for reconsideration when the district court failed to address the issue, and holding that the defendant abandoned the issue); *see also State v. Vigil*, 2014-NMCA-096, ¶ 18, 336 P.3d 380 (holding that a defendant who raised an issue at trial, but did not raise it before the district court abandoned the issue), *cert. granted*, 2014-NMCERT-009, 337 P.3d 95. Further, because we hold that Defendant failed to preserve his lack of foundation argument, his burden-shifting issue is rendered moot.

**CONCLUSION**

{18}    For the foregoing reasons, we affirm.

{19}    **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

**RODERICK T. KENNEDY, Judge (specially concurring).**

**KENNEDY, J., specially concurring.**

{20}    I concur entirely with the majority opinion and write separately only to draw attention to aspects of its considerable utility in helping to resolve a recurring source of consternation, at least to me. We are lately seeing a number of DWI cases that arrive through the Metropolitan and Second Judicial District Courts dealing with the use of dry-gas calibration for breath test instruments. In most, the defense has chosen to challenge, as an issue not directly related to the accuracy of the breath instrument, the "approval" or "certification" of the "canister," "tank," "simulator," or "container" containing the dry gas "external reference standard" that SLD has chosen to use in calibrating the test instrument.[2] Here, we did not have to delve into the attributes of the can because Defendant failed to connect the dots between "certification" and "approval" of the canister/simulator and did not provide us with a copy of the district court's decision to show the issue was preserved.

{21}    However, in this Opinion we supply citations to a few regulations that the defense failed to argue, Majority Op. ¶ 16; the one stating that SLD is given the power to "determine the breath alcohol simulator . . . gases to be used[,] 7.33.2.7(I) NMAC, one stating that calibration is "[t]he analysis of an externally delivered, controlled, ethanol vapor specimen of known alcohol concentration," 7.33.2.7(I) NMAC, and the

---

[2]Here, as with certification "stickers," misnomers beggar the analytical process.

14

one requiring that in a calibration check, the instrument is checked to ensure that its analysis of that sample of "known alcohol concentration" actually produces a reading within a specified range. 7.33.2.14(C)(2)(b)(ii) NMAC (requiring the gas "of known alcohol concentration" used in calibration checks that use dry gas "simulate 0.08 grams per 210 liters" and give results "within ±0.01"). Approval of a gas standard depends on the certification of its alcohol content by the manufacturer, as a condition of approval for purchase. *See* N.M. Dep't of Health, Sci. Lab. Div., List of Approved Breath & Blood Alcohol Testing or Collection Devices & Accessories, http://nmhealth.org/publication/view/general/1537 (last updated 4/2/2014) (stating that approval of the tank is valid only so long as the approved reference standard within meets the content and concentration specifications of the regulations quoted above). This explains the difference between approval and certification and demonstrates the result of SLD's "selection and evaluation" process for equipment. 7.33.2.9 NMAC.

{22}    That all of this is part of ensuring accuracy is demonstrated by the SLD regulations associating calibration with key operators, and their training in "quality control measures." 7.33.2.14(C)(2)(b) NMAC; 7.33.2.12(A)(2)(a)(iii)-(v) NMAC (providing for the training of "key operators," in the "preparation and use of a

simulator"; "calibration checks of selected breath alcohol instruments"; and "quality control measures"). I would add mention of the regulation making instrument key operators responsible for "the calibration checks of the instruments they oversee, maintenance of those instruments and their supplies[.]" 7.33.2.12(B)(1) NMAC.

{23}     I write separately to emphasize that an external reference sample—emphasis on the words "external" and "reference"—is something without which a breath test instrument cannot be calibrated and, as a result, without which an instrument cannot be said to be accurate.[3] A breath test instrument is incapable of determining whether an external reference sample is within its required tolerance because the external standard sets the reference point—an alcohol content verified elsewhere prior to its attachment to the instrument—by which the instrument measures by comparison unknown samples, e.g., the subject's breath. Thus, using the required external reference standard is the very anchor for the accuracy of the analytical process, ensuring that the eventual measured result of the breath sample represents what it purports to.[4] Without an external reference, in effect, the instrument would be

---

[3]E.g., "Calibration means the activity of verifying that a value generated by the instrument is in acceptable agreement with the assigned value for a traceable and/or certified reference standard, including any adjustment to the instrument to bring it into acceptable agreement." N.Y. Comp. Codes R. & Regs. tit. 10, § 59.1(l) (2011).

[4]Ted Vosk & Ashley F. Emery, *Forensic Metrology: Scientific Measurement and Inference for Lawyers, Judges, and Criminalists*: *Metrological Traceablity,* § 3.4, at 80 (2015).

comparing the standard to its last reading—sort of like certifying the accuracy of a gasoline pump by stopping it when it said a gallon, and not putting the gas delivered in a container certified by the weights and measures agency to actually hold a gallon. Perhaps this is enough of a trail of breadcrumbs to assist the Hansels and Gretels concerned with the accuracy of a breath test to assess why a gas canister is only approved by SLD if it already contains the proper "external reference standard." 7.33.2.14(C)(2)(b)(ii) NMAC (requiring the gas "of known alcohol concentration" within the canister that is used in dry gas calibration checks "with each subject test[,]" to "simulate 0.08 grams per 210 liters" and give results "within ±0.01"). Thus, SLD approves a cylinder/tank that is already certified by its manufacturer as to the quality of its contents.

{24}    On the issue of proper foundation for the breath test, I would hold that the foundation laid by the State, including testimony as to the use of the gas reference/simulator standard was sufficient to justify the test's admission. Perhaps it is worth studying as a road map for discharging the prosecution's responsibility. In *State v. King*, we held that "[c]ompliance with the SLD regulations intended to ensure accuracy is a predicate to admission in evidence of test results." 2012-NMCA-119, ¶ 10, 291 P.3d 160. "Certification" is requisite, but *State v. Martinez*,

17

2007-NMSC-025, 141 N.M. 713, 160 P.3d 894, held that showing "the machine has been certified is not enough[,]" but that "the State must also make a threshold showing that SLD certification was current at the time the test was taken." *Id.* ¶ 12 (internal quotation marks). *Martinez* was clear in reiterating *Dedman*'s rule that "to meet foundational requirements, the State does not need to show compliance with all regulations, but only with those that are 'accuracy-ensuring.' " *Martinez*, 2007-NMSC-025, ¶ 11 (quoting *State v. Dedman*, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628, *overruled on other grounds by State v. Bullcoming*, 2010-NMSC-007, 147 N.M. 487, 226 P.3d 1); *State v. Onsurez*, 2002-NMCA-082, ¶ 13, 132 N.M. 485, 51 P.3d 528 ("[W]eekly calibration is only one of the requirements for certification[.]"). *Martinez* states that calibration checks "clearly exist to ensure that the result of a test conducted on a breathalyser is accurate." 2007-NMSC-025, ¶ 12. With dry-gas calibration, a calibration check is run with every test performed, rather than a weekly calibration using a wet-bath simulator. 7.33.2.14(C)(2)(b)(ii) NMAC. In *Martinez*, calibration was demonstrated by the officer's experience and evidence that the machine's log indicated calibration within the requisite period to allow continued certification. 2007-NMSC-025, ¶ 12. The content of the document showing calibration is what is important, not the officer's knowledge of the underlying process. *Id.* ¶ 22.

{25} In this case, the officer who conducted the test testified that a "simulator" was behind the breath machine and looked like a small oxygen tank connected by a black rubber hose. The officer testified that he saw the brand name on the tank, and he knew from whom it was purchased (CMI, who he identified as the maker of the IR 8000 breath testing device), and further testified correctly that its contents were manufactured by one of the SLD-approved makers of the standards (ILMO). "It's actually the number two on the SLD's list." Since the trial court must be satisfied by a preponderance of the evidence that those regulations have been followed prior to admitting the BAT results, Rule 11-104(A) NMRA, *Martinez*, 2007-NMSC-025, ¶ 19, the State established that the canister containing the gas that is the reference sample used to calibrate the breath test machine was approved according to SLD regulations, and properly used in conjunction with Defendant's breath test. This testimony is therefore, in my opinion, sufficient to satisfy the State's foundational burden as to whether the gas canister used as a calibration simulator reference standard employed in this case is compliant, further satisfying the State's burden under *Martinez* and *State v. Willie*, 2008-NMCA-030, 145 N.M. 615, 179 P.3d 1223, *rev'd on other grounds by* 2009-NMSC-037, 146 N.M. 481, 212 P.3d 369. The results of the calibration check that was run at the time Defendant's breath was tested (.078 g/210l) were within the parameters required by the accuracy-ensuring regulations concerning

19

the alcohol value required of reference standards used for calibration checks. 7.33.2.14(C)(2)(b)(ii) NMAC (requiring the gas within the canister used to calibrate the breath test machine to "simulate 0.08 grams per 210 liters" and give results "within ±0.01").[5]

{26} So I concur because, in this case, I believe the State presented adequate testimony to demonstrate that the gas cylinder employed in this case was one approved by SLD, and in light of the calibration check being within SLD regulations' requirement for its alcohol value, the gas reference standard used for calibration facially satisfied the requirement for the calibration check in the accuracy-ensuring regulation. *See* 7.33.2.14(C)(2)(b)(ii) NMAC ("[A] single calibration check using solutions or gases which simulate 0.08 grams per 210 liters shall be performed with each subject test; satisfactory calibration check results must be within ± 0.01; these

---

[5] It is the gas in the cylinder itself that "simulates" the required alcohol content, and I note that the SLD regulations' use of the term "simulator" is universally distinct and separate from references to gas reference standards, usually referring to the use of "wet-bath" simulators. I regard the cylinder/simulator distinction as needing clarification, if at all, at the SLD or trial level; it is not relevant to my analysis here. *See* 7.33.2.7(I) NMAC (distinguishing "alcohol simulator solutions" from "gases" used to calibrate); 7.33.2.7(L) NMAC (separately listing "simulators, gas tanks, gas brackets, and reference standards"); 7.33.2.9(A) NMAC (requiring manufacturers of "wet-bath simulators [] and reference standards" wishing to sell to New Mexico buyers to submit their wares for approval); 7.33.2.12(A)(2)(a)(ii) NMAC (providing for training of key operators by SLD representatives in "the preparation and use of a simulator"); 7.33.2.14(C)(2)(b) NMAC (distinguishing solutions and gases as two methods of calibration).

test results shall be valid for the purpose of determining if the subject test is 0.08 grams per 210 liters or more[.]").

_____
**RODERICK T. KENNEDY, Judge**